# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **THOMAS CORCORAN** | * |
| | * |
| Plaintiff | * |
| | * |
| v. | *  Civil No.  **PJM 16-1813** |
| | * |
| **JEFFRSON B. SESSIONS,** | * |
| **as ATTORNEY GENERAL OF** | * |
| **THE UNITED STATES,** | * |
| | * |
| **THOMAS E. BRANDON,** | * |
| **as ACTING DIRECTOR OF** | * |
| **BUREAU OF ALCOHOL, TOBACCO,** | * |
| **FIREARMS, AND EXPLOSIVES,** | * |
| | * |
| **WILLIAM M. PALLOZZI,** | * |
| **as SECRETARY OF MARYLAND** | * |
| **STATE POLICE,** | * |
| | * |
| **and** | * |
| | * |
| **BRIAN FROSH,** | * |
| **as ATTORNEY GENERAL FOR** | * |
| **THE STATE OF MARYLAND** | * |
| | * |
| Defendants | * |

## <u>MEMORANDUM OPINION</u>

Thomas Corcoran sues Jefferson B. Sessions, Attorney General of the United States;[1]

Thomas E. Brandon, Acting Director of the Federal Bureau of Alcohol, Tobacco, Firearms, and

---

[1] This case was originally docketed as *Corcoran v. Lynch, Brandon, Pallozzi, and Frosh*. Loretta Lynch served as Attorney General of the United States until January 20, 2017. On February 9, 2017, Defendant Sessions was sworn into that office. As indicated in the accompanying Order, Sessions has been substituted for Lynch as a co-Defendant.

Explosives; William M. Pallozzi, Secretary of the Maryland State Police; and Brian Frosh, Attorney General for the State of Maryland.[2]

In 2016, Corcoran was denied a Handgun Qualification License by the Maryland State Police pursuant to § 5-133 of the Maryland Public Safety Article.

He brings four claims against the State Defendants, challenging §§ 5-133(b)(1), 5-144, and 5-205(b)(1) of the Maryland Public Safety Article (the "Maryland Firearms Prohibitions"). In Count I, Corcoran argues, pursuant to the Second Amendment, that the Maryland Firearms Prohibitions are unconstitutional as-applied to him. In Count II, he makes a facial Second Amendment challenge to the Maryland Firearms Prohibitions. Corcoran further alleges that the Maryland Firearms Prohibitions violate the Ex Post Facto Clause of the U.S. Constitution (Count IV) and have an impermissible retroactive effect (Count V).[3]

The State Defendants have filed a Motion to Dismiss for Failure to State a Claim, ECF No. 6, and Corcoran has filed a Response in Opposition and Cross Motion for Summary Judgment. ECF No. 7.

In the fall of last year following a hearing on the cross-motions, ECF No. 16, the Court stayed all proceedings until the case of *Hamilton v. Pallozzi*, Case No. 16-1222 in the United States Court of Appeals for the Fourth Circuit, could be decided. When the Fourth Circuit issued its opinion in *Hamilton*, this Court lifted the stay as to the claims against the State Defendants.[4]

---

[2] Hereinafter, Sessions and Brandon will be referred to as the "Federal Defendants" and Pallozzi and Frosh will be referred to as the "State Defendants."

[3] In his sole claim against the Federal Defendants (Count III), Corcoran seeks declaratory relief and an order permanently enjoining the Federal Defendants from enforcing 18 U.S.C. § 922(g)(1) against him.

[4] Pursuant to a joint motion of Corcoran and the Federal Defendants, the Court stayed the claim against the Federal Defendants pending resolution of the claims against the State Defendants. ECF No. 15. The stay with regard to that claim remains in effect. The Court will not, therefore, discuss the federal claim in this Opinion.

Thereafter, the Court requested Corcoran and the State Defendants to file supplemental briefs, as will be explained *infra*.

For the reasons that follow, the Court will **GRANT IN PART** and **DENY IN PART** the State Defendants' Motion to Dismiss (ECF No. 6) and will **DENY** Corcoran's Motion for Summary Judgment (ECF No. 7).

## I. FACTUAL HISTORY

### A. Corcoran's 1976 Virginia Conviction

By his own report, in 1975, while a student at American University in Washington, D.C., Corcoran was arrested in Virginia after using his then-girlfriend's car without her permission. Compl. ¶ 9, ECF No. 1.[5] In 1976, he pled guilty to "Unauthorized Use of a Vehicle" under § 18.2-102 of the Virginia Criminal Code.[6] *Id.* Depending upon the value of the property involved, violation of § 18.2-102 was established as either a Class 1 misdemeanor or a Class 6 Felony. *See* Va. Code Ann. § 18.2-102. Corcoran avers that, at the time of his conviction in 1976, under Virginia Criminal Code § 18.2-102, if the value of the taken property was under $100, the defendant was subject to a Class 1 misdemeanor, carrying a maximum sentence of one year in jail. Compl. ¶ 11. If the value of the taken property was over $100, the crime was considered a Class 6 felony punishable by no less than one year and no more than five years in jail. *Id.*

---

[5] Corcoran suggests that the Virginia District Court destroyed his case file ten years after his conviction pursuant to the Virginia Code § 16.1-69.57, which requires destruction of certain case records, specifically criminal misdemeanor convictions as opposed to felony convictions. Compl. ¶ 9.

[6] Section 18.2-102 of the Virginia Criminal Code states:

> Any person who shall take, drive or use any animal, aircraft, vehicle, boat or vessel, not his own, without the consent of the owner thereof and in the absence of the owner, and with intent temporarily to deprive the owner thereof of his possession thereof, without intent to steal the same, shall be guilty of a Class 6 felony; provided, however, that if the value of such animal, aircraft, vehicle, boat or vessel shall be less than $200, such person shall be guilty of a Class 1 misdemeanor. . . ."

Virginia Criminal Code § 18.2-102.

Corcoran maintains that he pled guilty to the misdemeanor and received a 90-day suspended sentence, no fine, and no probation. *Id.* at ¶ 9.[7] There were no other charges issued, no aggravating circumstances, and Corcoran was never incarcerated. *Id.*

### B. Maryland's Firearms Prohibitions

Section 5-133(b)(1) of the Maryland Public Safety Article prohibits Maryland residents from possessing a regulated firearm if the person "has been convicted of a disqualifying crime."[8] *See* Md. Code Ann. Pub. Safety § 5-133(b)(1).[9] A "disqualifying crime" is defined as "(1) a crime of violence; (2) a violation classified as a felony in the State; or (3) **a violation classified as a misdemeanor in the State that carries a statutory penalty of more than 2 years**." Md.

---

[7] Other than his own testimony, Corcoran cites no evidence supporting his contention that he pled guilty to the misdemeanor, as opposed to the felony form of the charge, but, as indicated, there is apparently no record of the case in Virginia's files.

[8] Section 5-205 of the Maryland Public Safety Article similarly prohibits a Maryland resident from possessing a rifle or shotgun if that person "has been convicted of a disqualifying crime as defined in § 5-101." Md. Code Ann. Pub. Safety § 5-205(b)(1). Section 5-144 makes it illegal for "a dealer or other person" to "knowingly participate in the illegal sale, rental, transfer, purchase, possession, or receipt of a regulated firearm in violation of this subtitle." Sections 5-133, 5-144, and 5-205, were enacted as part of the Maryland Gun Violence Act of 1996. *See Neal v. State*, 191 Md. App. 297, 312, 991 A.2d 159, 168 (2010).

[9] In addition to the prohibition in § 5-133(b)(1), the statute also prohibits a Maryland resident from possessing a regulated firearm if that person:

> . . . (2) has been convicted of a violation classified as a common law crime and received a term of imprisonment of more than 2 years; (3) is a fugitive from justice; (4) is a habitual drunkard; (5) is addicted to a controlled dangerous substance or is a habitual user; (6) suffers from a mental disorder . . . and has a history of violent behavior against the person or another; (7) has been found incompetent to stand trial . . . ;(8) has been found not criminally responsible . . .; (9) has been voluntarily admitted for more than 30 consecutive . . . ; (10) has been involuntarily committed to a facility . . .; (11) is under the protection of a guardian appointed by a court . . .; (12) . . . is a respondent against whom: (i) a current non ex parte civil protective order has been entered . . . ; or (ii) an order for protection . . . has been issued . . . ; or (13) if under the age of 30 years at the time of possession, has been adjudicated delinquent by a juvenile court for an act that would be a disqualifying crime if committed by an adult.

Md. Code Ann. Pub. Safety § 5-133(b). Corcoran alleges generally that none of these other provisions apply to him. *See* Compl. ¶ 8.

Code Ann. Pub. Safety § 5-101(g)(3) (emphasis supplied). The Maryland Court of Appeals has held that the definition of "disqualifying crime" in § 5-101(g) includes out-of-state convictions and, that in determining whether a foreign crime is a "disqualifying crime," a Maryland agency must look to the maximum sentence of the crime *within its own Criminal Article* that it considers the closest equivalent to the foreign crime.[10] *See McCloud v. Dept. of State Police*, 426 Md. 473, 476 (2012). *See also Hamilton v. Pallozzi*, 848 F.3d 614, 618-19, n.2 (4th Cir. 2017).

### C. Corcoran's Handgun Qualification License Application

Corcoran is now a sixty-five year old resident of Bethesda, Maryland. *Compl.* ¶ 8, 14. Other than the Virginia conviction forty years ago, he has no other criminal history and has had no run-ins with the criminal justice system. *Id.* at ¶ 10.

On December 14, 2015, he applied to the Maryland State Police for a Handgun Qualification License, seeking to purchase and possess a handgun to defend himself and his family within his own home. *Id.* ¶¶ 1, 14.

On January 8, 2016, the Maryland State Police denied Corcoran's Handgun Qualification License application, citing his 1976 misdemeanor conviction in Virginia. *Id.* ¶ 15. The Police concluded that Corcoran's 1976 Virginia conviction was equivalent in nature to § 7-203 of the Maryland Criminal Law Article, "Unauthorized Removal of Property," denominated a misdemeanor but one that carries a maximum sentence of incarceration of <u>four</u> years.[11] *Id.* In

---

[10] Federal law similarly prohibits the possession of firearms by a person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1). However, under federal law, the definition of a "crime punishable by imprisonment for a term exceeding one year" does not include "any State offense *classified by the laws of the State* as a misdemeanor and punishable by a term of imprisonment of two years or less." 18 U.S.C. § 921(a)(2)(B) (emphasis supplied). Therefore, unlike Maryland, federal law looks to the forum of conviction, not to its own or any other State's sentencing statutes for an equivalent crime.

[11] Neither Corcoran nor the State Defendants have addressed whether the equivalent Maryland statute is properly § 7-203 of the Maryland Criminal Law Article. Maryland also has, in its Transportation Article, a "joyriding" statute. Md. Code Ann., Transp. § 14-102. The maximum penalty for that misdemeanor is

consequence, since Corcoran's 1976 conviction was deemed to qualify as a "disqualifying crime" under the Maryland Firearms Prohibitions, the Police concluded that he could not legally possess a firearm pursuant to § 5-133(b)(1). *Id.* Corcoran appealed to the Maryland Office of Administrative Hearings which, on April 27, 2016, upheld the denial. *Id.*

## II. PROCEDURAL HISTORY

On June 2, 2016, Corcoran filed the present suit. Counts I, II, IV, and V assert Corcoran's claims against the State Defendants. *Id.* As indicated, in Count I, he makes an as-applied Second Amendment challenge to the Maryland Firearms Prohibitions pursuant to 42 U.S.C. § 1983. *Id.* at ¶ 19-22.[12] He asserts that given his unique personal circumstances and the lack of any evidence that his possession of a firearm would pose any danger to the public, it is unconstitutional for Maryland to apply its firearms prohibitions to him. *Id.* Count II of Corcoran's Complaint is a facial Second Amendment challenge to the Maryland Firearms Prohibitions. *Id.* at ¶ 23-26.[13] Counts IV and V respectively assert that the Maryland Firearms Prohibitions constitute an Ex Post Facto penalty under the U.S. Constitution and have an

---

"imprisonment not exceeding 2 months or a fine not exceeding $500 or both." *Id.* § 14-102(d) (effective October 1, 2017) (derived without substantive change from former Md. Code Ann., Transp. § 27–101(c)(2)). If this is in fact the appropriate counterpart to Corcoran's conviction under the misdemeanor portion of Virginia Criminal Code § 18.2-102 (Virginia does not appear to have a separate "joyriding" statute), that would obviously have the effect of turning this whole case around. Inasmuch as the Court is denying the State Defendants' Motion to Dismiss Count I, the parties may wish to address the applicability *vel non* of § 14-102 of Maryland's Transportation Article in subsequent briefing.

[12] In Count I, Corcoran seeks declaratory relief and an order permanently enjoining the State Defendants from enforcing the Maryland Firearms Prohibitions against him based on his 1976 Virginia conviction.

[13] With regard to the facial challenge, Corcoran seeks declaratory relief that application of the Maryland Firearms Prohibitions violates the Second and Fourteenth Amendment to the United States Constitution.

Impermissible Retroactive Effect as applied to Corcoran and similarly situated Maryland residents. *Id.* at ¶ 29-35.[14]

On February 17, 2017, the Fourth Circuit issued its opinion in *Hamilton v. Pallozzi*.[15] Following that, this Court lifted the stay on Corcoran's claims against the State Defendants, ECF No. 18, and the parties briefed the effect of the Fourth Circuit's opinion in *Hamilton* on their positions, ECF Nos. 19, 20, 21, as well as the application of the second-prong of the framework developed in *U.S. v. Chester*, 628 F.3d 673 (4th Cir. 2010) (i.e., the means-end scrutiny prong) to Corcoran's as-applied Second Amendment challenge. ECF Nos. 23, 24.

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) governs dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation and quotation marks omitted). "[I]n evaluating a Rule 12(b)(6) motion to dismiss, a court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). The court will also "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor . . . ." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). But "legal conclusions,

---

[14] Both Counts IV and V request declaratory relief and an order permanently enjoining the State Defendants from enforcing the Maryland Firearms Prohibitions against him on account of his 1976 Virginia conviction.

[15] The Fourth Circuit subsequently denied Hamilton's request for a rehearing *en banc*, and its mandate issued on March 27, 2017. Hamilton petitioned the Supreme Court for a writ of certiorari, *Hamilton v. Pallozzi, et al.* No. 16-1517, on June 20, 2017. As of the date of this opinion, the Supreme Court has not ruled on the petition.

elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts . . . ." *Nemet Chevrolet*, 591 F.3d at 255. "[A] complaint must contain 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id*. (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)) (quotation marks omitted). "Facial plausibility is established once the factual content of a complaint 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id*. at 256 (quoting *Iqbal*, 129 S. Ct. at 1949). "[T]he complaint's factual allegations must produce an inference of liability strong enough to nudge the plaintiff's claims 'across the line from conceivable to plausible.'" *Id*. (quoting *Iqbal*, 129 S. Ct. at 1952).

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This does not mean, however, that "*some* alleged factual dispute between the parties" defeats the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Rather, "the requirement is that there be no *genuine* issue of *material* fact." *Id.* (emphasis in original).

## IV. ANALYSIS

The Court considers Corcoran's three constitutional challenges to the Maryland Firearms Prohibitions in logical sequence: (1) the facial challenge to the Maryland Firearms Prohibitions pursuant to the Second Amendment; (2) the as-applied challenge to the Maryland Firearms Prohibitions under the Second Amendment; (3) the assertion that the Prohibitions violate the Ex Post Facto Clause of the U.S. Constitution and have an impermissible retroactive effect.

### A. Facial Challenge to the Maryland Firearms Prohibitions (Count II)

Citing the Supreme Court's holdings in *District of Columbia, et. al. v. Heller*, 554 U.S. 570 (2008), and *McDonald v. Chicago*, 561 US. 742 (2010), Corcoran argues that States may not infringe on the right of citizens to keep and bear arms for the purpose of self-defense. The Maryland Firearms Prohibitions, he says, do just that by failing to differentiate between violent and non-violent offenders. He maintains that the statutes categorically infringe the Second Amendment rights of Maryland residents previously convicted of non-violent misdemeanors that are in no way dispositive or demonstrative of whether that person should be deprived of his or her right to bear arms under the Second Amendment.[16]

To bring a successful facial challenge, Corcoran "must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745, (1987). In other words, he must demonstrate "that the law is unconstitutional in all of its applications." *Wash. State Grange v. Wash. State Republican Party,* 552 U.S. 442, 449, (2008).

The Second Amendment provides that: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. Amend. II. In *Heller*, the Supreme Court held that the Second Amendment right to

---

[16] Corcoran also suggests that § 5-133(b)(1) is overbroad because § 5-101(g)(1) "includes a 'crime of violence' as a separate disqualifying crime, and § 5-101(c) outlines eighteen offenses considered as crimes of violence." Although the parties have not discussed this overbreadth argument in their briefings, the Court easily rejects this argument. "[N]o circuit has accepted an overbreadth challenge in the Second Amendment context," and "an individual 'to whom a statute was constitutionally applied,' cannot 'challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court.'" *United States v. Chester*, 514 F. App'x 393, 395 (4th Cir. 2013). *See also United States v. Masciandaro,* 638 F.3d 458, 460 (4th Cir.2011) ("[W]e conclude that this [overbreadth] challenge is foreclosed by our determination that the regulation is constitutional on an as-applied basis."); *United States v. Carter*, 669 F.3d 411, 420 (4th Cir. 2012) ("[A]s the Supreme Court made clear when it signaled that the prohibitions on firearms by felons and the mentally disabled were presumptively constitutional, 'some categorical disqualifications are permissible: Congress is not limited to case-by-case exclusions of persons who have been shown to be untrustworthy with weapons.'").

keep and bear arms is an individual right without regard to militia service. *Heller,* 554 U.S. at 595. In *McDonald*, the Court held that the Fourteenth Amendment "incorporates the Second Amendment right recognized in *Heller*" because the right is fundamental to the "system of ordered liberty." *McDonald v. City of Chicago*, 561 U.S. 742, 778, 791 (2010). However, "[l]ike most rights, the right secured by the Second Amendment is not unlimited." *Heller*, 554 U.S. at 626. That is, "the Second Amendment does not guarantee the right to possess for *every purpose,* to possess *every type of weapon,* to possess at *every place,* or to possess by *every person.*" *United States v. Carpio-Leon*, 701 F.3d 974, 977 (4th Cir. 2012) (emphasis in original). Accordingly, "[t]he weight of the right to keep and bear arms depends not only on the purpose for which it is exercised but also on relevant characteristics of the person invoking the right." *United States v. Carter*, 669 F.3d 411, 415 (4th Cir. 2012). *See United States v. Huitron-Guizar*, 678 F.3d 1164, 1166 (10th Cir. 2012) ("The right to bear arms, however venerable, is qualified by what one might call the 'who,' 'what,' 'where,' 'when,' and 'why.'"). In both *Heller* and *McDonald*, the Supreme Court recognized that "presumptively lawful regulatory measures" may be imposed to enforce certain "prohibitions on the possession of firearms by felons." *See Heller*, 554 U.S. at 626-27, n. 26.

In *U.S. v. Moore*, 666 F.3d 313 (2012), the Fourth Circuit—citing *Heller's* "presumptively lawful" language—concluded that the federal firearms law, 18 U.S.C. § 922(g)(1)—which prohibits individuals "convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" from possessing a gun—did not violate the Second Amendment on its face.[17] *Id.* at 316-19 ("[W]e have no difficulty in concluding that § 922(g)(1) is constitutionally valid on its face.").

_____

[17] In fact, "the circuit courts of appeals have continued to speak with one voice, unanimously upholding § 922(g)(1) in the face of Second Amendment attacks." *Hamilton v. Pallozzi*, 165 F. Supp. 3d 315, 325 n.19

The Fourth Circuit's analysis of the constitutionality of 18 U.S.C. § 922(g)(1) in the context of a Second Amendment facial challenge applies equally to Corcoran's challenge of the Maryland Firearms Prohibitions.

Corcoran's attempt to distinguish the federal and Maryland laws is unpersuasive. He is correct that § 922(g)(1) and the Maryland Firearms Prohibitions differ in that the federal law looks to the maximum sentence in the jurisdiction in which the proceedings were held, whereas the Maryland laws look to the closest equivalent crime listed within its own Criminal Article.[18] This distinction, however, does not alter the application of the *Moore* analysis to this case, especially in light of the Fourth Circuit's holding in *Hamilton* that analysis of 18 U.S.C. § 922(g)(1) is equally applicable to Maryland's firearms regulatory scheme. *See Hamilton v. Pallozzi*, 848 F.3d 614, 623 (4th Cir. 2017) ("The Maryland laws at issue are substantially similar to the federal prohibition on possession of guns by convicted felons found at 18 U.S.C. §

_____

(D. Md. 2016). Following *Moore*, the Fourth Circuit has consistently upheld the constitutionality of § 922(g)(1) and other provisions of § 922(g). *See, e.g.*, *United States v. Pruess*, 703 F.3d 242, 247 (4th Cir. 2012) (non-violent felons); *United States v. Izaguirre–De La Cruz*, 510 Fed.Appx. 233, 234 (4th Cir.2013) (illegal aliens); *United States v. Larson*, 502 Fed.Appx. 336, 339 (4th Cir.2013) (persons subject to a restraining orders).

[18] *See* text accompany note 10, *supra*. Corcoran argues that this feature of the Maryland Firearms Prohibitions violates the Full Faith and Credit Clause of the Constitution. Article IV, § 1 of the United States Constitution states that, "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." He maintains that "[w]hereas the Federal prohibition clearly provides full faith and credit to both the legislative act that created Virginia's 18.2-102 and its maximum sentence, Maryland's does not."

This argument, however, is unavailing. Maryland's use of its own statutory penalties in determining whether a conviction in another State disqualifies an individual from possessing a firearm in Maryland does not support a claim for violation of the Full Faith and Credit Clause. In *Hamilton*, the Fourth Circuit expressly held that "[t]he Full Faith and Credit Clause does not compel 'a [S]tate to substitute the statutes of other [S]tates for its own statutes dealing with a subject matter concerning which it is competent to legislate.'" *Hamilton*, 848 F.3d at 628, n.15 (quoting *Baker by Thomas v. Gen. Motors Corp.*, 522 U.S. 222, 232 (1998)). The stated purpose for looking to the Maryland equivalent crime when determining whether an out-of-state conviction is a disqualifying crime was to "effect Maryland policy and legislative intent more than we would by leaving it up to other [S]tates to define which criminal offenses are serious enough to bar obtaining a handgun permit in Maryland." *McCloud v. Dept. of State Police*, 426 Md. 473, 485 (2012).

922(g)(1). Thus, our discussion focuses primarily on case law surrounding § 922(g), as the analysis from those cases is equally applicable to the challenged Maryland laws."). In this context, the State to which the two laws look to in order to determine whether a crime amounts to a disqualifying crime is irrelevant.[19] Thus, *Moore's* reference to the Supreme Court's statement in *Heller* that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons . . ." has equal application to the instant case. *Id.* (quoting *Heller*, 554 U.S. at 626 (2008)). In short, Corcoran has not shown that Maryland's Firearms Prohibitions are unconstitutional in all their applications.

The Court will **GRANT WITH PREJDUICE** the State Defendants' Motion to Dismiss the facial challenge based on the Second Amendment.

### B. As-Applied Challenge to the Maryland Firearms Prohibitions (Count I)

The fact that the Maryland Firearms Prohibitions may be valid on their face does not resolve Corcoran's as-applied challenge. *See United States v. Moore*, 666 F.3d 313, 319 (4th Cir. 2012) (holding that the Supreme Court's language in *Heller* suggests that a presumptively lawful regulatory measure could be unconstitutional in the face of an as-applied challenge). The Fourth Circuit has developed and applied a two-prong framework to analyze as-applied challenges to firearms prohibitions. *See Hamilton v. Pallozzi*, 848 F.3d 614 (4th Cir. 2017) (applying the two-prong framework to the challenger's as-applied challenge to the Maryland Firearms Prohibitions). This two-prong test was originally formulated in *U.S. v. Chester*, 628 F.3d 673 (4th Cir. 2010) with regard to the federal firearms prohibitions codified in 18 U.S.C. § 922 *et*

---

[19] The Court also observes that the Maryland Court of Special Appeals has held that § 5-133's prohibition on the possession of firearms by those convicted of disqualifying crimes is valid under the Second Amendment. *See Spencer v. State*, 2015 WL 6108245, at *9 (Md. Ct. Spec. App. Oct. 15, 2015) (§ 5-133 "is exactly the type of regulatory measure prohibiting the possession of firearms by those convicted of a disqualifying crime that the Supreme Court stated that its holdings in *McDonald* and *Heller* did not touch.").

*seq.* Per *Chester*, a court must first ask "whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee." *Id.* at 680. If it does not impose such a burden, then the challenged law is valid. *Id.* If it does, the court must move to the second step of applying an appropriate form of means-end scrutiny. *Id.* The two-prong test was expanded upon in *U.S. v. Moore*, 666 F.3d 313 (4th Cir. 2012), which endorsed a streamlined analysis at step one in cases where a presumptively lawful regulatory measure is under review.[20] Per *Hamilton*, the streamlined analysis applies to the instant case because the Maryland Firearms Prohibitions are presumptively lawful. *See Hamilton*, 848 F.3d at 622.[21]

---

[20] As explained in *Hamilton*:

> *Chester* established a two-prong test for assessing a Second Amendment challenge. The first prong, reflecting *Heller*'s observation that the Second Amendment embodies rights existing at its ratification, requires our historical review to evaluate whether those rights, as understood in 1791, are "burdened or regulated" by the statute in question. *Chester*, 628 F.3d at 680. If so, under the second prong, the statute must pass constitutional muster in accordance with the appropriate level of judicial scrutiny. *Id. Moore* refined and crystallized our approach, however, explaining that "the *Chester* analysis is more streamlined when a presumptively lawful regulatory measure is under review." *Moore*, 666 F.3d at 318.

> In order for [a party] to rebut the presumption of lawfulness regarding § 922(g)(1) as applied to him, he "must show that his factual circumstances remove his challenge from the realm of ordinary challenges." *Moore*, 666 F.3d at 319.

*Hamilton*, 848 F.3d at 623.

[21] The Maryland Firearms Prohibitions extend to persons convicted of "violation[s] classified as [] misdemeanor[s] in the State that carr[y] a statutory penalty of more than 2 years." *See* Md. Code Ann. Pub. Safety §§ 5-133(b)(1), 5-101(g). Traditionally, "felons" are people who have been convicted of any crime "that is punishable by death or imprisonment for more than one year." 1 Wayne R. LaFave, *Substantive Criminal Law* § 1.6 (2d ed. 2015). *C.f. Carachuri–Rosendo v. Holder*, 560 U.S. 563, 567 (2010). Accordingly, even though Corcoran was convicted of a misdemeanor, based on the maximum possible punishment for the equivalent crime in Maryland (four years imprisonment for "Unauthorized Removal of Property"), his conviction meets the traditional definition of a felony, and Maryland treats it as a felony for purposes of the Maryland Firearms Prohibitions. For that reason, Corcoran is subject to a firearm ban that is, per *Heller*, "presumptively lawful." *See Binderup v. Attorney Gen. United States of Am.*, 836 F.3d 336, 348 (3d Cir. 2016) (noting that because § 922(g)(1)'s prohibition was presumptively lawful, it extended "to anyone convicted of a crime meeting the traditional definition of a felony"). *See also Zedonis v. Loretta Lynch*, 2017 WL 511234, at *5 (M.D. Pa. Feb. 8, 2017).

Under the streamlined analysis, at the first step of the inquiry, the court "need not undertake an extensive historical inquiry to determine whether the conduct at issue was understood to be within the scope of the Second Amendment at the time of ratification." *Hamilton*, 848 F.3d at 624. Rather, the court must "effectively supplant the historical inquiry with the more direct question of whether the challenger's conduct is within the protected Second Amendment right of 'law-abiding, responsible citizens to use arms in defense of hearth and home.'" *Id*. (quoting *Heller*, 554 U.S. at 635). The challenger "must show that his factual circumstances remove his challenge from the realm of ordinary challenges." *Id.* (quoting *Moore*, 666 F.3d at 320). If he is "able to demonstrate that he is outside the 'realm of ordinary challenges,' such that his conduct is within the protected right of 'law-abiding, responsible citizens to use arms in defense of hearth and home,'" the court must proceed to the second step: the means-end scrutiny. *Id*.

i.      **Corcoran has plausibly demonstrated that his factual circumstances remove his challenge from the realm of ordinary challenges.**

The first prong of the streamlined *Chester*-test requires the court to consider "whether the challenger's conduct is within the protected Second Amendment right of 'law-abiding, responsible citizens to use arms'" and whether that use of arms implicates the "defense of hearth and home." *Hamilton*, 848 F.3d at 624. The Fourth Circuit "consider[s] these as two separate and independent inquiries as to which a Second Amendment challenger must plead factual circumstances that remove the challenger's circumstances from the "realm of ordinary challenges." *Id.* at 624, n. 7.

1. <u>Corcoran has plausibly demonstrated that his conduct is within the protected Second Amendment right of a law-abiding, responsible citizen.</u>

Although *Hamilton* held that "a challenger convicted of a state law felony generally cannot satisfy step one of the *Chester* inquiry," it explicitly "[left] open the possibility that persons who are not convicted of felonies, but otherwise fall within the sweep of what we refer to as 'felon disarmament laws,' such as persons convicted of crimes labeled as a misdemeanors, but punishable by a term of prison such that the misdemeanor falls within the sweep of a felon disarmament law, may still potentially succeed at step one of the *Chester* inquiry." *Id.* at 625-26, n. 11. *See also United States v. Moore*, 666 F.3d 313, 320 (4th Cir. 2012) ("We do not foreclose the possibility that a case might exist in which an as-applied Second Amendment challenge . . . could succeed."). Accordingly, *Hamilton* does not automatically preclude a misdemeanant, like Corcoran, from successfully demonstrating that his conduct is within the protected Second Amendment right of a "law-abiding, responsible citizen."

*Hamilton* "confin[ed] the step one analysis to the challenger's criminal history." *Id.* at 626. Accordingly, it "consider[ed] only the conviction or convictions causing the disability to the challenger," and held that "evidence of rehabilitation, likelihood of recidivism, and passage of time are not bases for which a challenger might remain in the protected class of 'law-abiding, responsible' citizen[s]." *Id.*[22] *See also Binderup v. Attorney Gen. United States of Am.*, 836 F.3d 336, 349 (3d Cir. 2016) ("We reject [the] claim that the passage of time or evidence of rehabilitation will restore the Second Amendment rights of people who committed serious

---

[22] Corcoran argues that the Fourth Circuit's limitation on the scope of analysis was restricted to a *felony*-encumbered challenger, and therefore, does not apply to a misdemeanor-encumbered challenger, like himself. The Court believes this argument misreads the *Hamilton* opinion, which applied this limitation to step one of the *Chester* analysis generally.

crimes.").[23] In the instant case, given this restriction, the Court considers only Corcoran's single, non-violent conviction for "Unauthorized Use of a Vehicle." In other words, counterintuitive as it may seem, Corcoran's four decades of law-abiding conduct following his conviction are irrelevant to the Court's analysis.

In scrutinizing the challenger's underlying convictions, *Hamilton* emphasized that because in that particular case the challenger's "theft and fraud crimes were 'black-letter *mala in se* felonies reflecting grave misjudgment and maladjustment,'" he could not be a law-abiding, responsible citizen. *Hamilton*, 848 F.3d at 627 ("Theft, fraud, and forgery are not merely errors in filling out a form or some regulatory misdemeanor offense; these are significant offenses reflecting disrespect for the law."). *See also Hamilton v. Pallozzi*, 165 F. Supp. 3d 315, 326-27 (D. Md. 2016), *aff'd*, 848 F.3d 614 (4th Cir. 2017).[24]

The Court will assume that Corcoran, like Hamilton, was convicted of a *malum in se* (as opposed to a *malum prohibitum*) offense. However, it bears noting that neither the original

---

[23] As the Fourth Circuit in *Hamilton* noted, "this portion of the [*Binderup*] opinion technically only garnered support from seven of the fifteen judges of the en banc court." *See Hamilton*, 848 F.3d at 625, n. 8.

[24] In *Hamilton*, at the District Court level, Judge Bredar of this Court held:

> Although the particular statutes that Plaintiff violated are directed toward misappropriation of credit cards, the underlying misconduct is the kind of misconduct that the law has proscribed from time immemorial. Plaintiff's crimes are not technical or regulatory offenses: they are black-letter *mala in se* felonies reflecting grave misjudgment and maladjustment.
>
> While Plaintiff emphasizes the nonviolent nature of his crimes, studies show a statistically significant risk that persons who commit property crimes may engage in other maladaptive behaviors. For instance, a 2014 study published by the Bureau of Justice Statistics, which tracked recidivism patterns of 404,638 state prisoners released in 2005, found that 82.1% of former property offenders were arrested for a new offense within five years following their release.

*Hamilton*, 165 F. Supp. at 326–27.

Virginia law under which Corcoran was convicted[25] nor the purportedly equivalent Maryland law[26] requires an intent to steal or permanently deprive the owner of the property as an element. Furthermore, neither offense includes as an element the use of force, and there is no indication that Corcoran's offense was violent.[27]

The relatively innocuous nature of Corcoran's criminal activity is brought into focus when measured against as-applied challenges to various provisions of 18 U.S.C. § 922 previously rejected within the Fourth Circuit. In those cases, the challengers had multiple criminal convictions, including felonies. *See*, *e.g.*, *Moore*, 666 F.3d 313 (more than twenty convictions, including a number of felonies, as well as over twenty other arrests); *Hamilton*, 165 F. Supp. 3d 315 (three serious crimes, two of which were felonies); *Pruess*, 703 F.3d 242 (at least twenty prior convictions); *Smoot*, 690 F. 3d 215 (arrested thirty-two times and convicted sixteen times over the course of twenty-one years, including assault on a police officer and drug offenses); *United States v. Wallace*, 2013 WL 3491467, at *2 (W.D.N.C. July 11, 2013) (four

---

[25] Section 18.2-102 of the Virginia Criminal Code states: "Any person who shall take, drive or use any animal, aircraft, vehicle, boat or vessel, not his own, without the consent of the owner thereof and in the absence of the owner, and with intent temporarily to deprive the owner thereof of his possession thereof, without intent to steal the same, shall be guilty of a Class 6 felony; provided, however, that if the value of such animal, aircraft, vehicle, boat or vessel shall be less than $200, such person shall be guilty of a Class 1 misdemeanor. . . ."

[26] Section 7-203 of the Maryland Criminal Law Article states: "Without the permission of the owner, a person may not take and carry away from the premises or out of the custody of another or use of the other, or the other's agent, or a governmental unit any property, including: (1) a vehicle; (2) a motor vehicle; (3) a vessel; or (4) livestock." It also says: "It is not a defense to this section that the person intends to hold or keep the property for the person's present use and not with the intent of appropriating or converting the property." *But see* note 11, *supra*.

[27] It is true that the Fourth Circuit has held that "application of the felon-in-possession prohibition to allegedly non-violent felons . . . does not violate the Second Amendment." *United States v. Pruess*, 703 F.3d 242, 247, n. 3 (4th Cir. 2012) ("[T]he Founders severely limited the right to bear arms, excluding from its protection a broad range of often non-violent individuals and groups deemed 'dangerous.'"). *See also Hamilton*, 848 F.3d at 627; *United States v. Carter,* 669 F.3d 411, 415 (4th Cir.2012) ("[T]he Anglo–American right to bear arms has always recognized and accommodated limitations for persons perceived to be dangerous."). That said, the violent or non-violent nature of an underlying offense remains instructive in analyzing whether or not a challenger is within the protected class of "law-abiding, responsible citizen."

felonies, including convictions for possession of drug paraphernalia, failure to appear, conspiracy to manufacture methamphetamine, and sale of a Schedule II controlled substance).

Indeed, the Fourth Circuit has previously distinguished an as-applied challenger's past convictions from the extensive criminal histories of other challengers. In *United States v. Kline*, 494 F. App'x 323 (4th Cir. 2012), for example, the Fourth Circuit "acknowledge[d] that [the challenger's] criminal history [was] not as egregious as those of the defendants in *Moore* and *Smoot*." *Id.* at 325. Ultimately, however, the Fourth Circuit in *Kline* held that the challenger's prior Virginia state felony conviction for eluding law enforcement—resulting from a high-speed car chase over a distance of several miles, pursuit on foot, and apprehension by officers using a canine and taser—was sufficient to reject the as-applied challenge. Similarly, in *United States v. Rhodes*, 2012 WL 1981853 (S.D.W. Va. June 1, 2012), the court considered an as-applied challenge of a man who had previously been convicted of battery, DUI (twice), and two instances of driving on a suspended or revoked license. The court held that "Rhodes' lone felony conviction distinguished his circumstances from those of the *Moore* defendant," but found that his circumstances were not "so far removed from the realm of ordinary challenges to the statute's application that he should receive a constitutional restoration of his firearm privileges." *Id*. at *6 (noting that his convictions "reflect a studied disregard for the trust society reposes in those to whom the privilege of driving is granted"). Compared to these criminal histories, Corcoran's "Unauthorized Use of a Vehicle" conviction seems trivial.[28]

---

[28] The Court notes that, at various times up to the present and in Maryland itself, particularly when the vehicle whose use was not authorized belonged to a relative or friend, the offence has been known as "joyriding." *See* note 11, *supra*; *In re Lakeysha P.*, 106 Md. App. 401, 415, 665 A.2d 264, 271 (1995); 9 A.L.R.3d 633 (1966) ("Automobiles: Elements of offense defined in 'joyriding' statutes"); 3 Francis Wharton, Criminal Law & Procedure § 363 at 334 (14th ed. 1980), ("[B]y statute in many jurisdictions, the mere unauthorized use of a motor vehicle—sometimes called "joyriding"—has been made a crime"); W. Lafave & A. Scott, 2 Substantive Criminal Law, § 8.5(b) at 362 (1986), ("A large number of [S]tates have singled out the motor vehicle for special treatment, making it a crime (generally called 'joyriding,' a

In the Court's view, Corcoran's single, non-violent misdemeanor conviction more closely resembles the criminal histories of two as-applied challengers whose cases were recently decided by the U.S. Court of Appeals for the Third Circuit. In a consolidated *en banc* opinion, the Third Circuit affirmed two separate district court opinions that granted the challengers summary judgment on their as-applied challenges to 18 U.S.C. § 922(g)(1).[29] *Binderup v. Attorney Gen. United States of Am.*, 836 F.3d 336 (3d Cir. 2016).[30] The challenger in one of those as-applied challenges, *Suarez v. Holder*, 2015 WL 685889, at *7 (M.D. Pa. Feb. 18, 2015), *aff'd sub nom. Binderup*, 836 F.3d 336, was held subject to 18 U.S.C. § 922(g)(1) based on a single, non-violent misdemeanor conviction for carrying a handgun without a license. The challenger who brought the other as-applied challenge, *Binderup v. Holder*, 2014 WL 4764424, at *21 (E.D. Pa. Sept. 25,

---

crime somewhat less serious than larceny) to take such a vehicle with intent to use it and return it."); Model Penal Code § 223.9 Comment, 270–71; R. Perkins & R. Boyce, Criminal Law 333–34 (3d ed. 1982).

[29] The Third Circuit applied a two-prong test very similar to the one set out in *Chester*. In fact, the Third Circuit's two-prong test was originally set out in *Marzzarella*, which served as the basis for the Fourth Circuit's development of the two-part *Chester* framework. *See United States v. Chester*, 628 F.3d 673, 680 (4th Cir. 2010) ("Thus, a two-part approach to Second Amendment claims seems appropriate under *Heller*, as explained by the Third Circuit Court of Appeals, *see Marzzarella*, 614 F.3d at 89 . . ."). While the Fourth Circuit, in *Hamilton*, chose not to adopt the "seriousness" test elucidated in *Binderup* at step one of the *Chester* inquiry, the holding and factors considered in *Binderup* remain instructive. *See Hamilton* 848 F.3d at 626 ("We find the main opinion in *Binderup* well-reasoned and thoughtful, but decline to adopt it in its entirety. Rather than adopting the 'seriousness' test elucidated in *Binderup* at step one of the *Chester* inquiry, we simply hold that conviction of a felony necessarily removes one from the class of 'law-abiding, responsible citizens' for the purposes of the Second Amendment, absent the narrow exceptions mentioned below.").

Judge Hardiman authored a concurrence joined by four judges, setting forth a one-step test: once a challenger distinguishes himself as a responsible, law-abiding citizen, there is no need for means-end scrutiny. *Binderup*, 836 F.3d at 378 (Hardiman J., concurring) ("Applying some form of means-end scrutiny in an as-applied challenge against an absolute ban—after it has already been established that the individual has a right to keep and bear arms—eviscerates that right via judicial interest balancing in direct contravention of *Heller*.").

[30] On January 5, 2017, Defendants filed a Petition for a writ of certiorari in *Sessions v. Binderup*. No. 16-847. On June 26, 2017, the Supreme Court denied the petition for writ of certiorari. *Sessions v. Binderup*, No. 16-847, 2017 WL 2722469 (U.S. June 26, 2017); *Binderup v. Sessions*, No. 16-983, 2017 WL 2722471 (U.S. June 26, 2017).

2014), *aff'd sub nom. Binderup,* 836 F.3d 336, had been convicted of a single, non-violent misdemeanor for corruption of minors related to a romantic affair he had with a 17-year-old when he was 41-years-old. The Third Circuit concluded that in both cases, the challengers' convictions were not serious enough to strip them of their Second Amendment rights. *Binderup,* 836 F.3d at 351. In granting the challengers summary judgment, the plurality opinion considered (1) whether the State where the crimes occurred classified the offenses as misdemeanors or felonies, (2) whether the crimes involved violent criminal conduct, (3) the severity of the sentences imposed, and (4) whether there was cross-jurisdictional consensus regarding the seriousness of the crimes. *Id.* at 351-52 (Ambro, J., plurality opinion, joined by two judges).[31] *See also Zedonis v. Loretta Lynch*, 2017 WL 511234, at *6 (M.D. Pa. Feb. 8, 2017) (noting that "this standard represents the view of only three judges of the *Binderup* panel").

The Fourth Circuit has not established a definitive list of factors to be considered in evaluating whether a challenger remains in the protected class of "law-abiding, responsible citizen." *Binderup* nonetheless offers guidance. Just to remind: By his own unrefuted report, Corcoran submits that his conviction arose from his use of his then-girlfriend's car without her permission. As this Court has already suggested, this action seems considerably less "egregious" that the crimes found in other as-applied challenges. The *de minimis* nature of Corcoran's act is underscored by applying the *Binderup* factors. In Virginia, where Corcoran committed the crime, the offense was deemed to be a misdemeanor punishable by no more than one year

---

[31] Judge Ambro authored the Opinion of the Court. Although these factors were only endorsed by two other judges, the decision to affirm the grant of summary judgment for the challengers represented the opinion of eight of the fifteen judges. Judge Hardiman's concurrence, joined by four judges, focused on the non-violent nature of the offenses and the existence of evidence indicating that the challengers were "responsible  citizens, each with a job, a family, and a clean record since [their convictions]." *Binderup*, 836 F.3d at 374-77 (Hardiman, J., concurring). Judge Hardiman also highlighted that the challengers' home State had seen fit to reinstate their right to keep and bear arms, noting that was by no means dispositive.

imprisonment. *Cf. Hamilton*, 848 F.3d at 627, n. 13 (noting that Virginia—where the challenger committed the crime—considered two of the charges to be felonies)*; Binderup v. Attorney Gen. United States of Am.*, 836 F.3d 336, 351 (3d Cir. 2016). No violence was involved.[32] The punishment imposed on Corcoran—90 days imprisonment suspended, no fine and no probation—was extraordinarily light. *See Binderup*, 836 F.3d at 353 ("With not a single day of jail time, the punishments here reflect the sentencing judges' assessment of how minor the violations were."). As to the fourth *Binderup* factor, cross-jurisdiction consensus regarding the seriousness of the crime, the apparent implication of the *Binderup* analysis is that if there is consensus in several jurisdictions that the offense is not particularly serious, that would suggest that it should not be deemed to be serious in states that do not embrace the general consensus. Again, if one considers Corcoran's conviction to be essentially a "joyriding" violation, it may be that "joyriding" is not deemed a relatively serious offense as defined by cross-jurisdictional consensus. *See* note 28, *supra*. Insofar as Maryland's Unauthorized Removal of Property statute is concerned, there does not appear to be any evidence one way or another in terms of cross-jurisdictional consensus.[33]

For these reasons, the Court concludes that at this stage Corcoran has plausibly established that he remains within the protected class of "law-abiding, responsible citizen."

---

[32] *See* note 27, *supra*.

[33] It may well be that there is a consensus among those States that do not have "joyriding" statutes but address such crimes under general unauthorized removal of property statutes in which lesser categories of seriousness have been established for certain crimes, as with the misdemeanor and felony forms of § 18.2-102 of the Virginia Criminal Code.

Although *Hamilton* indicates that it was not adopting the "seriousness" test of *Binderup*, *see* note 29, *supra*, this Court understands that reference to pertain to consideration of how serious the facts of the underlying crime were, not whether there is a cross-jurisdictional consensus as to the seriousness or lack of seriousness of the type of crime involved.

2. <u>Corcoran's intended use of firearms plausibly implicates the defense of hearth and home.</u>

In *Heller*, the Supreme Court held that self-defense is the "central component" of the right. *D.C. v. Heller*, 554 U.S. 570, 628, 635, (2008) (stating that the Second Amendment "surely elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home" and emphasizing that the prohibition extended "to the home, where the need for defense of self, family, and property is most acute"). In *Hamilton*, the Fourth Circuit expressed "concern that Hamilton's pleaded basis for owning a gun—'self-defense within his own home'—[was] precisely the kind of 'far too vague and unsubstantiated' fear [it has] rejected before." *Hamilton*, 848 F.3d at 624, n.7. *See* also *Moore*, 666 F.3d at 320 (rejecting challenge on the basis that a "fear of being robbed . . . is far too vague and unsubstantiated to remove [a] case from the typical felon in possession case."); *Smoot*, 690 F.3d at 222 (rejecting a desire to possess a weapon premised on a tip that "other people were looking for [the defendant]" on the same basis); *Pruess*, 703 F.3d at 246 (rejecting a desire to possess ammunition primarily for hunting purposes on the same basis). However, the *Hamilton* court did not ultimately decide that Hamilton's generalized claim *ipso facto* precluded him from showing that his challenge was outside the "realm of ordinary challenges."

Here, Corcoran proffers that he desires to possess a firearm for self-defense and protection of the hearth and home. He is not seeking a concealed carry permit or similar authorization that might permit him to use the gun outside the defense of his home. While his desire may be generalized, it nevertheless remains at the heart of Second Amendment protections. *See generally Heller*, 554 U.S. 570 (2008). More significantly, to say that Corcoran's desire to purchase and possess firearms for defense of himself and his family within his own home is too "vague and unsubstantiated" to remove him from the ordinary realm of

cases begs the real question, namely: What can a challenger possibly allege regarding his proposed use of a firearm to satisfy this aspect of the first-prong?

At this juncture, at least, the Court concludes that Corcoran's conduct conceivably falls within the protected Second Amendment right of 'law-abiding, responsible citizens to use arms in defense of hearth and home." He has at least plausibly demonstrated that his factual circumstances are outside the realm of ordinary challenges.

       **ii.**     **<u>Based on the current record, the State Defendants cannot satisfy intermediate scrutiny.</u>**

At step two of the *Chester* framework, the burden of production shifts to the State Defendants to establish that the Maryland Firearms Prohibitions satisfy the appropriate means-ends scrutiny. *Chester*, 628 F.3d at 683.

       1.  <u>Intermediate scrutiny applies.</u>

The Court considers first the level of constitutional scrutiny that applies. "*Heller* left open the level of scrutiny applicable to review a law that burdens conduct protected under the Second Amendment, other than to indicate that rational-basis review would not apply in this context." *See Chester*, 628 F.3d at 682. Accordingly, the court must "select between strict scrutiny and intermediate scrutiny." *Id.*

Corcoran urges the Court to apply strict scrutiny because application of the Maryland Firearms Prohibitions results in his complete disarmament, and thus imposes a "severe burden" on his Second Amendment right. The State Defendants contend that intermediate scrutiny applies. The Court finds that Corcoran's argument cuts too far.

In selecting the appropriate level of scrutiny in similar as-applied Second Amendment challenges, the Fourth Circuit has analogized to the First Amendment context, where "the level of scrutiny [applied] depends on the nature of the conduct being regulated and the degree to

which the challenged law burdens the right." *Id.* (applying intermediate scrutiny even though the challenged law burdened an enumerated, fundamental right because courts "do not apply strict scrutiny whenever a law impinges upon a right specifically enumerated in the Bill of Rights").

In *Chester*, the Fourth Circuit concluded that "intermediate scrutiny is more appropriate than strict scrutiny" where a person, "by virtue of [his or her] criminal history," does not assert a claim "within the core right identified in *Heller*," i.e., "the right of a *law-abiding, responsible* citizen." *Chester*, 628 F.3d at 682-83 (emphasis in original).[34] *See also Hamilton v. Pallozzi*, 165 F. Supp. 3d 315, 324 (D. Md. 2016), *aff'd,* 848 F.3d 614 (4th Cir. 2017) ("For persons who, by virtue of their criminal history, do not qualify as law-abiding, responsible citizens, intermediate scrutiny is the appropriate standard of review."); *United States v. Chapman*, 666 F.3d 220, 225 (4th Cir. 2012). In other words, if a challenger's claim is not within the core right of a law-abiding, responsible citizen, intermediate scrutiny applies, which is not to say, however, that the challenger cannot ultimately prevail. It still remains possible for the challenger to demonstrate that the regulation violates the Second Amendment as applied to him or her.

The Court, following *Chester*, holds that intermediate scrutiny applies because Corcoran does not assert a claim within the core right of a law-abiding, responsible citizen. As discussed above, the Maryland laws prohibiting Corcoran from possessing a firearm in light of his Virginia misdemeanor conviction fall within the category of "presumptively lawful," "longstanding prohibitions on the possession of firearms by felons." *See Heller,* 554 U.S. at 626. *See also United States v. Carter*, 669 F.3d 411, 416 (4th Cir. 2012) (holding that a user of controlled

---

[34] Corcoran suggests that in *Chester*, the Fourth Circuit concluded that Chester's claim was "not within the core right identified in *Heller*" due to the specific nature of his underlying criminal behavior (i.e., the violent nature of his domestic violence misdemeanor). This argument misinterprets the *Chester* opinion, which did not take the particular nature of Chester's criminal conduct into consideration in making that decision. Rather, the *Chester* court categorically referred to his "criminal history as a domestic violence misdemeanant" to explain why "his claim [was] not within the core right identified in *Heller*." *Chester*, 628 F.3d at 682.

substances could not fairly claim to be asserting the "core" Second Amendment right of "law-abiding, responsible citizens"). The Maryland Firearms Prohibitions restrict firearm possession only by individuals with criminal convictions, and therefore do not impinge on the core rights of "law-abiding, responsible citizens."[35]

The Court holds under the second prong of the *Chester* analysis that intermediate scrutiny is the appropriate standard to review Corcoran's as-applied challenge to the Maryland Firearms Prohibitions.[36]

> 2. <u>The State Defendants have demonstrated a substantial government objective, but based on the current record, have not shown a reasonable fit.</u>

Under the intermediate scrutiny standard, the Government must demonstrate "that there is a 'reasonable fit' between the challenged regulation and a 'substantial' governmental objective." *Chester*, 628 F.3d at 683 (quoting *Bd. of Trs. of State Univ. of N.Y. v. Fox,* 492 U.S. 469, 480 (1989)); *United States v. Masciandaro*, 638 F.3d 458, 471 (4th Cir. 2011) (stating that the Government must demonstrate that the laws at issue are "reasonably adapted to a substantial governmental interest."); *Marzzarella,* 614 F.3d at 97 ("Although [the various forms of intermediate scrutiny] differ in precise terminology, they essentially share the same substantive requirements. They all require the asserted governmental end to be more than just legitimate,

---

[35] The Fourth Circuit's holding in *Kolbe v. Hogan*, 849 F.3d 114 (4th Cir. 2017) does not alter this analysis. Like the Maryland Firearms Prohibitions at issue in the instant case, Maryland's ban on assault weapons at issue in *Kolbe* "[did] not severely burden the core protection of the Second Amendment, i.e., the right of law-abiding, responsible citizens to use arms for self-defense in the home." *Id*. at 138. The assault weapons ban did not severely burden a core Second Amendment protection because it "ban[ned] only certain military-style weapons and detachable magazines, leaving citizens free to protect themselves with a plethora of other firearms and ammunition." Similarly, the Maryland Firearms Prohibitions challenged here do not implicate *Heller's* core protection because they regulate only those persons with a criminal history.

[36] Several circuits have applied intermediate scrutiny to laws restricting, but not eliminating, possession of handguns in the home. *See Binderup v. Attorney Gen. United States of Am.,* 836 F.3d 336, 353 (3d Cir. 2016); *Tyler v. Hillsdale Cty. Sheriff's Dep't*, 837 F.3d 678, 692 (6th Cir. 2016); *United States v. Skoien*, 614 F.3d 638, 641 (7th Cir. 2010); *United States v. Chovan*, 735 F.3d 1127, 1138 (9th Cir. 2013); *United States v. Reese*, 627 F.3d 792, 802 (10th Cir. 2010).

either 'significant,' 'substantial,' or 'important' ... [and] require the fit between the challenged regulation and the asserted objective be reasonable, not perfect."). "[I]ntermediate scrutiny does not require that a regulation be the least intrusive means of achieving the relevant government objective, or that there be no burden whatsoever on the individual right in question." *Masciandaro*, 638 F.3d at 474 (citing *United States v. Baker,* 45 F.3d 837, 847 (4th Cir.1995)). Notably, intermediate scrutiny places the burden of establishing the required fit squarely upon the Government. *See Fox,* 492 U.S. at 480–81. In meeting this burden, the government "may resort to a wide range of sources, such as legislative text and history, empirical evidence, case law, and common sense." *United States v. Carter,* 669 F.3d 411, 418 (4th Cir.2012); *United States v. Carter*, 750 F.3d 462, 466 (4th Cir. 2014).

a. <u>The State Defendants have demonstrated a substantial government objective.</u>

The State Defendants submit that the Maryland Firearms Prohibitions serve the Government's compelling interest in promoting public safety and preventing crime by keeping firearms out of the hands of individuals who, by virtue of their prior convictions, have proven to be particularly likely to misuse firearms. Indeed, the Fourth Circuit has so held that protecting the public and preventing crime are unquestionably substantial government interests. *See Kolbe v. Hogan*, 849 F.3d 114, 139 (4th Cir. 2017) ("To be sure, Maryland's interest in the protection of its citizenry and the public safety is not only substantial, but compelling."); *United States v. Hosford*, 843 F.3d 161, 168 (4th Cir. 2016) ("[I]nterests in public safety and preventing crime are indisputably substantial governmental interests."); *Woollard v. Gallagher*, 712 F.3d 865, 877 (4th Cir. 2013) ("[W]e can easily appreciate Maryland's impetus to enact measures aimed at protecting public safety and preventing crime, and we readily conclude that such objectives are substantial governmental interests."). The Supreme Court is fully in accord. *See Schall v. Martin*,

467 U.S. 253, 264 (1984) (recognizing the "legitimate and compelling state interest in protecting the community from crime"); *United States v. Salerno*, 481 U.S. 739, 750, 754–55 (1987) (ruling that the Government's interests in protecting "the safety and [] lives of its citizens" and "preventing crime by arrestees" are "legitimate and compelling").

The State Defendants, then, have as a matter of law satisfied their burden of demonstrating that the objectives of the Maryland Firearms Prohibitions of protecting the public and preventing crime are "substantial."

> b. <u>Based on the current record, however, the State Defendants have not shown a reasonable fit.</u>

The State Defendants must also satisfy their burden of demonstrating that there is a "reasonable fit" between the challenged regulations—i.e., those intending to keep firearms out of the hands of individuals convicted of Maryland misdemeanors carrying a maximum statutory penalty of more than two years or, for out-of-state sentences, convictions for which the equivalent crime in Maryland carries a maximum statutory penalty of more than two years—and the State's interest in protecting the public and preventing crime. On this point, the State Defendants contend that "[t]he Fourth Circuit has repeatedly rejected as-applied Second Amendment challenges to laws disarming felons and persons convicted of significant misdemeanor crimes" and that Corcoran's conviction indicates a "'manifest disregard' for the law and 'the rights of others.'"

Based upon the current record, the Court finds that the State Defendants have not as yet met their burden of establishing a reasonable fit.[37] *See Bd. of Trustees of State Univ. of New York*

---

[37] The State Defendants have not entered into the record any legislative text, legislative history, or empirical evidence that might establish a reasonable fit. While a cursory search for arguably relevant evidence revealed cases and a Maryland Attorney General opinion tracing the history of the Maryland Firearms Prohibitions as well as relevant social science studies, it is for the State Defendants to marshal the appropriate evidence, not the Court.

*v. Fox*, 492 U.S. 469, 480, (1989) ("[S]ince the State bears the burden of justifying its restrictions, it must affirmatively establish the reasonable fit we require.") (internal citations omitted).

Given the present posture of the case and lack of evidence submitted regarding the reasonableness of the fit, the Court finds that the State Defendants have not, as yet, met the burden that intermediate scrutiny requires of them.[38] *Cf. Holloway v. Sessions*, 2017 WL 3077035, at *7 (M.D. Pa. July 19, 2017) (denying the Government's motion to dismiss plaintiff's as-applied Second Amendment challenge to 18 U.S.C. § 922(g)(1), finding the "argument to be premature" because "the court requires a more thoroughly developed record before testing the strength of the government's justification"); *Zedonis v. Lynch*, 2017 WL 511234, at *10 (M.D. Pa. 2017) (denying the Government's motion to dismiss plaintiff's as-applied Second

---

[38] The Fourth Circuit has twice remanded as-applied Second Amendment challenges to the district court because the records before it were insufficient to determine whether the Government had satisfied its burden of demonstrating reasonable fit. *See United States v. Carter*, 669 F.3d 411, 419, 421 (4th Cir. 2012) ("[T]he government still bears the burden of showing that [the law's] limited imposition on Second Amendment rights proportionately advances the goal of preventing gun violence. And we conclude that in this case, the record it made is insufficient. Without pointing to any study, empirical data, or legislative findings, it merely argued to the district court that the fit was a matter of common sense. . . . Because the government did not present sufficient evidence to substantiate the fit, we vacate the judgment and remand the case to allow it to do so and to allow Carter to respond."); *United States v. Chester*, 628 F.3d 673, 683 (4th Cir. 2010) ("We cannot conclude on this record that the government has carried its burden of establishing a reasonable fit between the important object of reducing domestic gun violence and § 922(g)(9)'s permanent disarmament of all domestic-violence misdemeanants. The government has offered numerous plausible reasons why the disarmament of domestic violence misdemeanants is substantially related to an important government goal; however, it has not attempted to offer sufficient evidence to establish a substantial relationship between § 922(g)(9) and an important governmental goal. . . . [W]e think it best to remand this case to afford the government an opportunity to shoulder its burden and Chester an opportunity to respond. Both sides should have an opportunity to present their evidence and their arguments to the district court in the first instance."). *See also Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 668, 114 S. Ct. 2445, 2472, 129 L. Ed. 2d 497 (1994) ("[W]e think it necessary to permit the parties to develop a more thorough factual record, and to allow the District Court to resolve any factual disputes remaining, before passing upon the constitutional validity of the challenged provisions."); *Tyler v. Hillsdale Cty. Sheriff's Dep't*, 837 F.3d 678, 699 (6th Cir. 2016) (remanding to the district court because it could not "conclude, based on the current record, that the government ha[d] carried its burden to establish a reasonable fit between the important goals of reducing crime and suicides and § 922(g)(4)'s permanent disarmament of all persons with a prior commitment").

Amendment challenge to 18 U.S.C. § 922(g)(1) because "considerations [of means-end scrutiny] are more appropriately reserved for disposition on the merits"). *See also Duncan v. Becerra*, 2017 WL 2813727, at *9 (S.D. Cal. June 29, 2017) ("It may well be that on a more robust evidentiary showing, made after greater time and testimony is taken, that the State will be able to establish a reasonable fit. But not yet."); *Billups v. City of Charleston*, 194 F. Supp. 3d 452, 475 (D.S.C. 2016) ("[T]hese arguments have not been fully explored on the current record, and certainly cannot be resolved on the face of the complaint. Thus, the City has failed to show how plaintiffs' allegations are insufficient to support their claims, and the City's motion to dismiss must be denied.").

For this reason, the State Defendants' Motion to Dismiss will be **DENIED WITHOUT PREJUDICE** as to Count I.

### iii. <u>Corcoran is not entitled to summary judgment on Count I.</u>

The Court denies Corcoran's Motion for Summary Judgment for at least two reasons. As of now, Corcoran has simply supported the "facts" of his conviction with assertions in his Complaint and an affidavit supporting his Motion for Summary Judgment.[39] As far as the Court can tell, the State Defendants have had no opportunity to test these alleged "facts." Nor, of course, is the Court, at this stage, prepared to find conclusively that Corcoran was convicted of a misdemeanor under Virginia's Unauthorized Use of a Vehicle law, as opposed to a felony; that the circumstances of his Virginia conviction are as he suggests; and that he has not been convicted of any other crimes that would otherwise prohibit him from obtaining a firearm in Maryland. Each of these matters, and others, might well have an effect upon the Court's determination of whether Corcoran falls within the protected class of "law-abiding, responsible

---

[39] *See* notes 5 and 7, *supra*.

citizen" whose factual circumstances remove his challenge from the realm of ordinary challenges. Although Corcoran has pled facts that, if true, plausibly state a claim on which relief could be granted, those "facts" have not as yet been battle-tested and he is not, as of now, entitled to judgment as a matter of law.

For the same reason, it would be premature to rule as a matter of law that the State Defendants cannot meet their burden of satisfying the intermediate scrutiny standard. Following discovery, the parties and the Court will be in a better position to analyze whether there is a reasonable fit between the Maryland Firearms Prohibitions and Maryland's interests in protecting the public and preventing crime. *Cf. Holloway v. Sessions*, 2017 WL 3077035, at *7 (M.D. Pa. July 19, 2017) ("Given the multitude of factual considerations which inform the analysis at both steps of the [two-step] framework, we are compelled to deny defendants' motion to dismiss. We will also deny [plaintiff's] motion for summary judgment as premature."); *Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Baltimore*, 721 F.3d 264, 288–89 (4th Cir. 2013) ("In sum, under the Federal Rules of Civil Procedure and controlling precedent, it was essential to the City's opposition to the Center's summary judgment motion—and to a fair and proper exercise of judicial scrutiny—for the district court to have awaited discovery and heeded the summary judgment standard. . . . [T]he City must be accorded the opportunity to develop evidence relevant to the compelling governmental interest . . . including, inter alia, evidence substantiating the efficacy of the Ordinance in promoting public health.").

Accordingly, the Court will **DENY** Corcoran's Motion for Summary Judgment.

**C. Ex Post Facto Challenge to the Maryland Firearms Prohibitions (Counts IV and V)**

In Counts IV and V, Corcoran asserts that because the Maryland Firearms Prohibitions were adopted in 1996, some twenty years after his Virginia conviction, they violate the Ex Post Facto Clause of the U.S. Constitution and have an impermissible retroactive effect as applied to him and other similarly situated Maryland residents and citizens who seek to purchase or possess a handgun for defense of the home. He argues that at the time of his conviction in 1976, he would not have been prohibited under Maryland law from owning a firearm in the State of Maryland; therefore, the Maryland Firearms Prohibitions created additional, retroactive consequences of the misdemeanor offense, inflicting a greater punishment than the law attached to the conviction at the time it was committed, and have otherwise altered Corcoran's situation and right to self-defense of the home to his disadvantage. The Court disagrees.

The Constitution prohibits States from enacting Ex Post Facto laws. U.S. Const. art. I, § 10, cl. 1. "To fall within the ex post facto prohibition, a law must be retrospective—that is, it must apply to events occurring before its enactment—and it must disadvantage the offender affected by it by altering the definition of criminal conduct or increasing the punishment for the crime." *Lynce v. Mathis,* 519 U.S. 433, 441 (1997) (citations and internal quotation marks omitted). *See also Collins v. Youngblood,* 497 U.S. 37, 43 (1990) (holding that the Ex Post Facto Clause prohibits laws that "retroactively alter the definition of crimes or increase the punishment for criminal acts").

The Maryland Firearms Prohibitions under challenge here are not retrospective.[40]

---

[40] The Court also recognizes that the Maryland Firearms Prohibitions are not punitive. The Fourth Circuit distinguishes punitive/penal laws from civil/regulatory laws, holding that "[w]hile laws that retroactively increase 'punishment' or impose a 'penalty' violate the Ex Post Facto Clause, retroactive civil or regulatory ones do not." *United States v. O'Neal*, 180 F.3d 115, 122 (4th Cir. 1999). The Fourth Circuit applies a two-part test to determine whether a law is punitive or regulatory in nature.

*United States v. Mitchell*, 209 F. 3d 319 (4th Cir. 2000) supports this conclusion. There the defendant had purchased a firearm in February 1996. *Id.* at 321. A month later, he was convicted of misdemeanor assault and battery on his wife, i.e., a crime of domestic violence. *Id.* Then, in September 1996, Congress amended the Gun Control Act of 1968, making it illegal for a person convicted of a misdemeanor crime of domestic violence to possess a firearm or ammunition. *Id. See* 18 U.S.C. 922(g)(9). In July 1998, Mitchell was arrested and convicted of violating 18 U.S.C. 922(g)(9). He argued that because both his purchase of the firearm in question and his conviction for the misdemeanor crime of domestic violence had occurred before the enactment of § 922(g)(9), the application of that law to him violated the Ex Post Facto Clause. The Fourth Circuit disagreed, holding that 18 U.S.C. § 922(g)(9) did not run afoul of the Ex Post Facto Clause because it was not retrospective.[41] *Id.* at 322-23. The court concluded that

---

First, we must ask whether the legislature's intent, as discerned from the structure and design of the statute along with any declared legislative intent, was to impose a punishment or merely to enact a civil or regulatory law. Second, even if it appears that the legislature did not intend to impose a punishment, we must determine whether the effect of the law is so punitive in fact that the law may not legitimately be viewed as civil in nature. The analysis under this latter part of the test focuses upon whether the sanction or disability that the law imposes may rationally be connected to the legislature's non-punitive intent, or rather appears excessive in light of that intent.

*United States v. Farrow*, 364 F.3d 551, 554-55 (4th Cir. 2004) (citations and internal quotation marks omitted).

The non-penal nature of the Maryland Firearms Prohibitions is highlighted by the very challenger Corcoran brings. In *O'Neal* and *Farrow*, the Ex Post Facto challenges were brought by defendants facing criminal punishment who had previously been convicted of criminal offences. Corcoran brings his Ex Post Facto challenge in response to the rejection of his Handgun Qualification License application by the Maryland State Police. Unlike O'Neal and Farrow, Corcoran does not currently face a criminal sanction potentially increased by reason of his 1976 conviction. *Cf. United States v. Stegman*, 295 F. Supp. 2d 542, 547 (D. Md. 2003) ("[A] potential misdemeanor conviction for failure to cooperate does not increase Stegman's punishment for the 1997 firearms conviction.").

[41] The Court of Special Appeals of Maryland reached the same conclusion with regard to § 5-133 of the Maryland Public Safety Article. *See Octavion Demetrice Ratcliffe v. State*, 2016 WL 3127663, at *5 (Md. Ct. Spec. App. June 3, 2016) ("Appellant contends that applying § 5–133 . . . to his acts is retrospective. We disagree [because] . . . Appellant was not convicted nor was he sentenced here for his prior

"[i]t [was] immaterial that Mitchell's firearm purchase and domestic violence conviction occurred prior to § 922(g)(9)'s enactment because the conduct prohibited by § 922(g)(9) is the possession of a firearm." *Id*. at 322.

Here, as in *Mitchell*, the fact that the firearms prohibition was enacted after Corcoran's conviction is immaterial. The effect of the Maryland Firearms Prohibitions is prospective, not retroactive. Although related to a past act committed by Corcoran, the laws only prohibit current and future possession of firearms; they do not alter or increase any punishment for Corcoran's 1976 conviction.

Corcoran attempts to distinguish *Mitchell*, emphasizing that unlike him, Mitchell was on trial for having committed a new crime (possession of a firearm in violation of § 922(g)(9)). This is a difference without a distinction. Mitchell's arrest under § 922(g)(9) was the result of, as Corcoran puts it, the new legal consequence of his prior criminal conviction. Like Corcoran, Mitchell was prohibited from possessing a firearm because of a previous conviction, which occurred prior to the enactment of the law generating that prohibition. The fundamental question in Mitchell was whether a firearms prohibition violated the Ex Post Facto Clause since that prohibition was enacted after the disqualifying offense. According to the Fourth Circuit, the fact that Mitchell faced a criminal charge under § 922(g) made no difference. The court's determination that the law did not violate the Ex Post Facto Clause would have applied just the same if the posture in *Mitchell* had reflected the posture of the instant cast (i.e., if Mitchell had sought declaratory and injunctive relief prior to his arrest). For the same reason that firearms prohibitions do not run afoul of the Ex Post Facto Clause when used to prosecute a new offense,

conviction—his conviction of and augmented punishment for the more recent crime are based on permissible consideration of that prior conviction").

they do not offend the Clause when as-applied to prohibit a person from possessing a firearm in the first place.

The Court will **GRANT WITH PREJUDICE** the State Defendants' Motion to Dismiss as to Counts IV and V.

## IV. CONCLUSION

For the foregoing reasons, the State Defendants' Motion to Dismiss (ECF No. 6) is **GRANTED IN PART** and **DENIED IN PART** and Corcoran's Motion for Summary Judgment (ECF No. 7) is **DENIED**. The Court **DISMISSES WITH PREJUDICE** Counts II, IV, and V of Corcoran's Complaint (ECF No. 1) **WITH PREJUDICE**. The Court **DENIES WITHOUT PREJUDICE** State Defendants' Motion to Dismiss as to Count I.

Count I remains in the case for the present. In light of the foregoing and the potential need for discovery, parties **SHALL**, within 20 days, submit a proposed joint scheduling order.

A separate Order will **ISSUE**.


                                                    _____/s/_____
                                                **PETER J. MESSITTE**
                                         **UNITED STATES DISTRICT JUDGE**

**August 3, 2017**